## FEDERMAN v. UNITED STATES.

Circuit Court of Appeals, Seventh Circuit.
December 4, 1929.

Rehearing Denied January 18, 1930.

No. 4164.

Joseph G. M. Browne, of Brooklyn, N. Y., and Solon J. Carter, of Indianapolis, Ind., for appellant.

Albert Ward, of Indianapolis, Ind., for the United States.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Five persons were charged, in four counts of an indictment, with using the mails in a scheme to defraud and in the fifth count with a conspiracy. Appellant, Federman, the defendants Cowgill and E. Porter Ayres, were convicted on the first four counts. Defendants Edwin B. Ayres and Walter W. Bray were acquitted. Federman only appeals.

The issues relied on are: (a) Failure to prove the scheme to defraud; (b) failure to prove that appellant used or caused the mails to be used; (c) error in admitting evidence; (d) erroneous refusal to strike out testimony; (e) prejudice to appellant by reason of evidence admitted under the conspiracy count, on which he was acquitted.

Henry G. Steinbrenner, who was indicted but died before the trial, purchased, in bankruptcy, the assets of the defunct Burdick Tire & Rubber Company, at Noblesville, Ind., and, in connection therewith assumed a receiver's debt to the Huntington County State Bank of $55,000. Although the evidence is not very clear, it seems that, to settle the $55,000 indebtedness, and for other purposes not fully disclosed, nine $10,000 notes were given by the Steinbrenner Rubber Company to Edwin B. Ayres, who was indicted and acquitted in this case, and Wesley W. Hawley, officers of the Huntington County State Bank. Mr. Steinbrenner put up some $67,000 of his personal bonds to secure those notes. Steinbrenner got stock of the corporation to the amount of those notes, and, although it seems probable that part of the notes were paid by the sale of the Steinbrenner bonds, yet it also appears that the balance was paid by the corporation. It does not appear what other consideration Steinbrenner paid for the Burdick assets, but he sold those assets to the corporation and received therefor the whole of the common capital stock of the corporation in payment. It does not appear that Steinbrenner put anything into the corporation other than as above stated, or that it had any other assets, except merchandise purchased, which was either paid for out of the corporation assets or not at all. When merchandise was sold by the corporation, trade acceptances were taken therefor, and, because of business conditions, many of them were not paid as they matured, and, not having money to conduct the business, the evidence shows appellant devised a scheme to finance the business until, as is claimed, conditions became better and they could refinance the business.

The corporation had many banks where it did business, among which were the Guard-

ian National Bank and the Central Trust Company, of Chicago, and the First National Bank, of Noblesville, Ind., of which defendants Cowgill and Bray were, respectively, cashier and assistant cashier, and the Huntington County State Bank, of Huntington, Ind., of which defendants Edwin B. Ayres and E. Porter Ayres were, respectively, president and cashier.

The scheme devised by appellant was made possible by the fact that it took about four days to clear a check from one bank to another. Taking advantage of that fact, the corporation drew checks upon one bank, where it had no funds or insufficient funds, in favor of one of its other banks, and, before the check reached the drawee bank for payment a check was drawn upon another bank in favor of the payee in the first check. And so the matter went from April 1, 1925, less than a month after the incorporation of the Steinbrenner Rubber Company, until December of that year, when that practice was discontinued because some of the banks refused, or were unable, to continue their part of the operation. What was being done became known to certain officers of the Indiana banks long before the practice was discontinued, and the facts were not disclosed to their directors or stockholders. Those banks were, by reason of their part in the transactions, forced to suspend.

█ Appellant's first contention, that no scheme to defraud is shown, is based upon the proposition that the check kiting was only entered upon on the nonpayment of trade acceptances, and that the distinct and definitely stated purpose, object, and intention was to take up, ultimately, and pay the kited checks. Appellant's plan, whereby he intended to get, and did get, money from one bank upon the representation of the check, which was a representation that there was money in the bank on which the check was drawn, when as a matter of fact there were no funds in the drawee bank, without any power in the drawer of the check to provide funds to pay such check, except by drawing a like check under like circumstances, constituted a scheme to defraud. This does not mean that every drawer of a check against an account where he has no funds is guilty of a scheme to defraud, but, when the undertaking is such that the checks must be drawn and passed in rapid succession from one bank to another in an endless chain, as here, a scheme to defraud is shown.

█ The urge that there was no proof that the mails were used seems to us, under the evidence in the case, equally unsubstantial, although it may be that the record does not disclose that appellant ever placed any piece of mail in the post office or that he was ever present when any was so placed. Yet it does appear that appellant was in sole charge of, and wholly directed, the finances of the business, and that Mary Ault was the bookkeeper of the corporation under Federman and charged with the duty of carrying out its purposes as planned by Federman. To illustrate, there were two property statements. One was sent in a letter on December 23, 1925, while the kiting was going on, to the president of the Guardian National Bank, Chicago. The letter of transmission was signed by appellant. The other property statement was to the Huntington County Bank of the affairs of the Steinbrenner Rubber Company on December 1, 1925. Both statements were signed in the name of the corporation, by appellant. Mary Ault talked to Federman about those statements and identified his signature thereto. In the conversation she called his attention to the fact that one statement showed $56,000 cash, and the other $26,000; both statements being as of the same date. She told him she thought it was not proper to send out such statements. His answer was, "I am doing it and I will be responsible for it." Those statements afterwards came to the possession of the parties to whom they were addressed through the United States mail. The bookkeeper testified that certain checks which were signed by appellant were mailed to the Guardian National Bank, and those checks were received by the bank. In connection with this testimony, we must also take into consideration the fact not only that the checks were received through the mail, but that appellant intended that the scheme or plan should be carried out in the office of the corporation by Mary Ault and other clerks there, and that in the usual and ordinary course of business it could only be done through the mails, because the banks were widely separated and the telegraph company had refused to accept the certified checks and transmit the money.

█ It is urged that the nine $10,000 notes, given by the Steinbrenner Rubber Company to one of the acquitted defendants and another were improperly admitted in evidence. It appears that there was some manipulation of those notes upon the books by direction of appellant for the purpose of showing a false condition of the company's affairs.

The other objections relate to checks, statements, envelopes, etc., that pertained to the company's affairs during the continuance of the fraudulent scheme.

We are of opinion that there was no error, substantially prejudicial to appellant, in either the admission of evidence or the refusal to strike.

 It is lastly urged that evidence admitted under the conspiracy charge, on which appellant was acquitted, was prejudicial to him on the substantive charge. The record shows some substantial reasons why the conspiracy count was properly included in the indictment. We are of opinion that, as to the appellant, the evidence on the substantive charge did not need bolstering up by the evidence on the conspiracy charge. The jury was first fully instructed, and then, on request, all additional instructions asked by appellant were given, and there were no exceptions.

The judgment is affirmed.