## PENN OIL CO. v. VACUUM OIL CO.
### No. 5054.

Court of Appeals of District of Columbia.
Submitted March 10, 1931.
Decided April 6, 1931.

Alvin L. Newmyer and Joseph L. Tepper, both of Washington, D. C., for appellant.

Wilton J. Lambert, R. H. Yeatman, and Wm. E. Leahy, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

HITZ, Associate Justice.

This is an appeal from a decree of the Supreme Court of the District of Columbia granting a permanent injunction restraining the defendant company, its officers, agents, and servants from selling as "Mobiloil" any other oil, without first informing purchasers of the substitution.

The appellee here, plaintiff below, and hereafter called plaintiff, is a New York corporation engaged in refining and selling at wholesale lubricating oil for internal combustion engines.

Its oil is marketed and sold under the trade-name "Mobiloil," registered in the Patent Office as a trade-mark on January 27, 1920, but used as a trade-name since 1904, and applied to different grades of its oils by designating letters as "Mobiloil A" and "Mobiloil B."

The defendant company is a Maryland corporation selling lubricating oils and gasoline at retail; both companies operating in the District of Columbia and elsewhere.

On August 21, 1925, the Vacuum Oil Company filed its bill of complaint in the trial court setting out something of the history of its sixty years in business; the extensive scale of its operations in this country and abroad; its expenditure of several millions of dollars in advertising its product as Mobiloil—all resulting in the costly attainment of a valuable reputation in the trade.

The bill alleges that the defendant company, at many of its filling stations in Washington during the twelve months prior to the filing of the bill, sold to sundry customers asking for Mobiloil other and different oil, falsely represented as Mobiloil, and for the price of Mobiloil, but without disclosing the substitution to the purchasers.

The bill then charges ten specific sales of such substituted oil falsely represented as Mobiloil from ten different stations of the defendant company in the city of Washington on stated days; avers that the defendant company will continue said substitutions unless restrained; alleges irreparable loss and injury; and prays for a permanent injunction against such sales.

The bill was supported by several affidavits detailing the alleged purchases and analyses of the oils in question.

A rule to show cause against a preliminary injunction having been issued, the defendant company filed its answer to the bill and rule denying all the specific substitutions alleged; denying that it ever made any such substitutions at any time, or that it intended to engage in or continue any such practice; and alleging that the bill was brought in the course of an effort to eliminate the defendant from commercial competition following an unsuccessful attempt to buy out the defendant company and its business, which had reached large proportions upon its own efforts, expenditures, and merits.

This answer was supported by several affidavits denying the allegations of the bill, and on August 26, 1925, after a hearing, a temporary injunction was denied and the rule discharged.

Thereafter the plaintiff, by leave of court granted over objection of the defendant, amended the bill by adding allegations that on two specified occasions on different days an agent of the defendant company at one of its stations sold to a customer asking for Mobiloil an oil that was not Mobiloil, but which had been previously used in an internal combustion engine, and commonly known as crank case drainings.

The defendant answered the amended bill by denying the alleged sales of crank case drainings as substitutes for Mobiloil, or otherwise, and on the issues thus raised, on September 15, 1926, the case was ordered to the calendar for hearing, where it appears to have reposed until February, 1929, when it was heard in the trial court.

On February 6, 1929, after hearing, a memorandum opinion was filed by the court stating that the plaintiff's case had been established by the evidence in respect of the undisclosed substitution of other oil for Mobiloil, and that a permanent injunction against such sales would be granted.

On February 14, 1929, a supplemental memorandum of the trial judge stated that the evidence respecting the alleged sale of crank case drainings was insufficient to justify an injunction against the defendant company in that respect; the evidence indicating such sales, if made at all, to have been the act of one employee alone.

On the same day the final injunction complained of was granted, and it was "adjudged, ordered and decreed that the defendant, Penn Oil Company, its officers, agents, servants, and employees, be and they hereby are permanently enjoined and restrained from selling to anyone seeking and offering to buy or asking for 'Mobiloil' by name, any other or different lubricating oil without first informing such intending purchaser or purchasers that an oil other than 'Mobiloil' is to be supplied."

From this decree an appeal to this court was perfected and the record here contains eight assignments of error which can be conveniently considered as presenting but two main contentions:

I. That the decree was not justified by the evidence and the law applicable thereto, because it showed the bill to have been brought as part of a commercial campaign and not to restrain a legal wrong; because the weight of the evidence touching the al-

leged substitutions was insufficient to warrant an injunction at any time; and because there was no evidence offered of alleged substitutions for several years prior to the trial, and consequently no showing of continuing injury.

II. That the final decree should have formally dismissed the charge of selling crank case drainings in accordance with the supplemental memorandum of the trial judge.

As the controversy is mainly one of fact the evidence will be considered in some detail.

■ I. As to the decree being insufficiently supported by the evidence and the law, it appears that twenty-eight witnesses testified orally before the trial judge, of whom eleven were recalled once or more for further examination. On behalf of the plaintiff, this testimony tended to show that a certain motorcar had been specially equipped with a device more or less resembling the conduit by which lubricating oil is usually poured into the crank case, but which device led, not into the crank case, but into a removable can placed to receive the fruits of the intended purchases.

That two men were sent from New York to Washington, one an employee of the plaintiff and one apparently employed and loaned by a Better Business Bureau; these men testified in detail to many visits to many stations of the defendant company in Washington on July 25, 27, 28, and 30, 1925, always asking for Mobiloil.

At some stations they were told that the defendant company sold only its own oil and not Mobiloil, but at ten specified stations of the defendant company oil was sold to them as Mobiloil, at the price of Mobiloil, which was 10 cents per quart higher than defendant's oil; that such purchases were poured into the said device by servants of the defendants, and found their way into the cans, which were removed, sealed, and delivered to chemists, who in turn testified from analyses and examinations their opinions that such oil was not Mobiloil.

Defendant's testimony, given by its officers, station attendants, and other witnesses, denied all such substituted sales; denied any sales to any car equipped as described; denied any practice or intention at any time of substituting its oils for Mobiloil; and, by way of affirmative explanation of the proceedings, offered testimony of commercial competition with the Standard Oil Company, at that time the Washington distributor for Mobiloil.

This testimony, touching numerous petty frauds and concealments, given by the alleged actors therein, developed a sharp conflict as observed by the trial judge, but, after argument and consideration, and after seeing and hearing the witnesses perform in open court, he found the facts for the plaintiff and against the defendant, and decreed the injunction. And, after examination of all the evidence in the record, we agree with his findings and conclusions.

■ The findings of facts by a trial judge are never to be lightly disturbed. McLarren v. McLarren, 45 App. D. C. 227; Economon v. Barry-Pate Co., 55 App. D. C. 143, 3 F.(2d) 84; Grosfield v. U. S., 276 U. S. 499; Ellison v. Splain, 49 App. D. C. 101, 261 F. 247; Blundon v. Blundon, 56 App. D. C. 313, 12 F.(2d) 848.

■ The unauthorized and undisclosed substitution of one article of sale for another is familiar ground for injunction against the seller. Elgin Watch Co. v. Ill. Watch Case Co., 179 U. S. 665, 21 S. Ct. 270, 45 L. Ed. 365; Warner v. Lilly Co., 265 U. S. 526, 44 S. Ct. 615, 68 L. Ed. 1161; Hennesy v. Wine Growers' Ass'n (D. C.) 212 F. 308.

"The imitator of another's goods must sell them as his own production. He cannot lawfully palm them off on the public as the goods of his competitor. The manufacturer or vendor is entitled to the reputation which his goods have acquired and the public to the means of distinguishing between them and other goods; and protection is accorded against unfair dealing whether there be a technical trade-mark or not. The wrong is in the sale of the goods of one manufacturer or vendor as those of another." Warner Co. v. Lilly Co., 265 U. S. 531, 44 S. Ct. 615, 618, 68 L. Ed. 1161.

■ But the appellant contends that fraudulent substitutions found to exist in July, 1925, do not justify an injunction in February, 1929, as the writ of injunction must operate in futuro to prevent continuing and threatened wrongs, while the evidence here at most shows only certain long-completed wrongs for which the plaintiff has adequate remedy at law.

But this case was not tried on any such theory; quite the contrary, for defendant's counsel repeatedly conceded that, if the evidence established the substitutions in fact, the injunction must follow in law.

The course of the proof was changed by

these concessions, and the trial judge repeatedly acted thereupon. And the defendant also expressly conceded at the trial that the word "Mobiloil" is a duly registered trade-mark which the plaintiff company owns and is entitled to use.

But, aside from estoppel, the point has no value, for while it is, of course, true that injunctions operate in futuro, the suit comes into equity because of a threatened wrong, which may be great, by invasion of business, and not because of the completed wrong, which must be slight, by sale of a quart of oil.

If the plaintiff could sue at law in damages for the wrong done, it could sue in equity for injunction to prevent a continuance of the wrong.

The evidence having established sales of substitutes during the period of investigation from July 25 to July 30, 1925, indicated a course of conduct which, like certain other facts, once found to exist, are presumed to continue. 1 Wigmore, Ev. 382.

"The charge of unfair competition being established, it follows that equity will afford relief by injunction to prevent such unfair competition for the future. Several acts of unfair competition having been shown, we are warranted in concluding that petitioner is willing to continue that course of conduct, unless restrained." Warner Co. v. Lilly Co., 265 U. S. 531, 44 S. Ct. 615, 617, 68 L. Ed. 1161.

"If a plaintiff has the absolute right to the use of a particular word or words as a trade-mark, then, if an infringement is shown, the wrongful or fraudulent intent is presumed, and although allowed to be rebutted in exemption of damages, the further violation of the right of property will nevertheless be restrained." Elgin Watch Co. v. Ill. Watch Case Co., 179 U. S. 674, 21 S. Ct. 270, 274, 45 L. Ed. 365.

There can be no claim of laches in bringing the suit, which was filed within a month of the sales complained of, and there is nothing in the record to indicate that the plaintiff was responsible for any delay thereafter occurring, which may have been wholly due to the congested docket of the court. While an injunction may sometimes be avoided by affirmative showing that former transgressions no longer exist, and while in this case the defendant may have desisted pendente lite, yet, if the plaintiff is entitled to relief, it is entitled to effective relief, and, as the Seventh Circuit Court of Appeals said in a

similar case, "No assurance is in sight that petitioner, if it could shake respondent's hand from its shoulder, would not continue its former course." Sears, Roebuck & Co. v. Fed. Trade Commission, 258 F. 307, 310, 6 A. L. R. 358.

The appellant further contends that the testimony of the two witnesses for the plaintiff who had equipped the car for the tour of investigation, and who made the purchases of alleged substituted oil, should be received only with great caution and suspicion in support of so drastic a remedy as injunction.

But these men were not professional detectives working for unusual or contingent compensation, and their credibility was in no way impeached.

They were competent witnesses, and were entitled to be heard, for "no court is at liberty to refuse credence to the testimony of witnesses unless there is something in the record upon which to rest the refusal." Bijur v. Bendix, 52 App. D. C. 240, 285 F. 974, 975; Browning v. Johnson, 50 App. D. C. 337, 271 F. 1017.

"It is not the law, however, that relief in equity will be denied when the only actual sale proven is one to complainant's detective. It may be * * * that such a sale is not per se an infringement [of a trademark]; but * * * it may, in connection with other proof, be persuasive evidence of other sales, and convincing proof of an intention to sell whenever the opportunity of doing so without detection is presented. * * *

"Against this threatened injury complainant should be protected by an injunction, but there is not proof sufficient to warrant a decree for an accounting." Lever v. Pasfield (C. C.) 88 F. 484, 485; Kessler & Co. v. Goldstrom (C. C. A.) 177 F. 392.

It was the duty of the court to hear these witnesses, to weigh their testimony in the light of their relation to the parties, their interest in the cause, and the other evidence.

They both testified at length; both were recalled for further examination; and both testified on their first direct examination as well to the refusals of Mobiloil at some stations as to the sale thereof at others.

The court had ample opportunity to consider and compare their testimony with the other evidence in the case, and we find no error in this respect.

II. The appellant finally contends that the decree for injunction should have ex-

pressly and in terms exonerated the defendant company from the charge of selling crank case oil, as made in the amended bill, because of a doubt indicated in the supplemental opinion as to whether the alleged sales of crank case drainings should be regarded as acts of the defendant company or as acts of the one employee involved therein. But the record shows no request made to the trial court for any such provision in the decree, which runs in the language of the prayer for relief, and which stands as the final conclusion of the court.

We regard the form and the substance of that decree as being within the pleadings, the evidence, and the discretion of the trial court, and it is therefore affirmed, with costs.

Affirmed.