INTERNATIONAL ASSOCIATION OF MACHINISTS, LOCAL LODGE NO. 311, AFL–CIO; International Association of Machinists, District Lodge No. 94, AFL–CIO; and International Association of Machinists, AFL–CIO, Petitioners,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 14818.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 9, 1960.

Decided Feb. 16, 1961.

Mr. Bernard Dunau, Washington, D. C., with whom Mr. Plato E. Papps, Wash-

ington, D. C., was on the brief, for petitioners.

Mr. Melvin J. Welles, Attorney, National Labor Relations Board, of the bar of the Court of Appeals of New York, pro hac vice by special leave of court with whom Messrs. Stuart Rothman, General Counsel, National Labor Relations Board, Dominick L. Manoli, Associate General Counsel, National Labor Relations Board, and Marcel Mallet-Prevost, Asst. General Counsel, National Labor Relations Board, were on the brief, for respondent. Mr. Herman M. Levy, Attorney, National Labor Relations Board, also entered an appearance for respondent.

Before FAHY, DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

Pursuant to our Rule 38(k), 28 U.S. C.A. the parties stipulated the issue before us to be whether "the Board properly found that petitioners [the Union [1]] engaged in conduct in violation of Section 8(b) (2) of the National Labor Relations Act as amended."[2] The Union contends that the record will not sustain the Board's finding of illegality; the Board asks enforcement of its order as amended.[3]

If the Board's amended order is to be sustained, it must be supported by a record which shows that the Union violated section 8(b) (2) of the Act by exerting economic pressure on the Company by the picketing and listing, hereinafter discussed, for the purpose of forcing the Company to recognize the Union as the exclusive bargaining representative of the employees and to enter into a union security agreement, at a time when the Union had been decertified and no longer represented a majority of the employees. Such conduct and such purposes, if established, might be assumed to constitute an unfair labor practice

1. The petitioners collectively herein described as the Union include the International Association of Machinists, AFL-CIO, I.A.M. Local Lodge 311 and I.A.M. District Lodge 94.

2. 29 U.S.C.A. § 158.

3. 121 N.L.R.B. 1176.

as an interference with the employees' section 7 rights, 29 U.S.C.A. § 157, but we are not called upon so to decide.[4]

The Board in June, 1956, had certified the Union as the collective bargaining representative in the appropriate unit. Negotiations for a contract went forward over a period of many weeks, the Union's proposals including provisions for a union shop and a check-off. The latter terms were omitted from the Company's counterproposals, and a stalemate was reached on September 18, 1956. The Union then called a strike and began picketing the Company's plant. Negotiations went forward, notwithstanding, until sometime in December, 1956. The picketing continued in 1956 and 1957 and at least until February 5, 1958, it was stipulated, when a hearing before the Examiner commenced. It was further stipulated at that time that since about July 8, 1957, seven months after bargaining had ceased, the Union had placed the Company on an "Unfair List" posted at the Union halls and on a "We do not patronize" list, published in a Union newspaper.

Meanwhile, a petition for decertification having been filed, a Board-ordered election had been held on September 25, 1957. Only one vote had been cast for the Union, one ballot was void, 14 were challenged, and 90 were against the Union. The Board decertified the Union as of December 16, 1957, but the picketing and the listing continued, as noted.

The Examiner's findings in the foregoing and other respects had been based upon stipulated or undisputed evidence. He recommended that the Union be ordered to cease and desist from restraining or coercing the employees of the Company in the exercise of their section 7 rights by picketing the Company's premises and by placing the Company's name on the Union's "unfair" and "we do not patronize" lists. The Board, one member dissenting, adopted the Examiner's findings, conclusions and recommendations,[5] and on October 3, 1958, issued its order accordingly.

The Examiner and the Board largely had relied upon the Board's decision in Curtis Brothers, Inc.,[6] wherein we later denied enforcement.[7] Thereupon the Board amended its order of October 3, 1958, in view of the holding by this court that picketing for recognition by a minority union does not violate section 8(b) (1) (A) of the Act. The latter element thus is out of the case, yet it had been the "principal legal issue," without which, we may suspect, the complaint might not have been lodged in the first place.

That the Union, while still certified, attempted when it so was lawful, to cause the Company to accord it recognition and to induce a union security agreement, we have no doubt. To presume that the Union's picketing and listing *after* decertification were continued for purposes which had become illegal is another matter. The Board argues that the Union did nothing to signify an abandonment of the original objectives, which its order proscribed. "It did not claim that it wanted less, after the de-

---

4. Cf. Local Lodge No. 1424, International Association of Machinists v. National Labor Relations Board, 1960, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832.

5. Except his recommendation that an injunction be sought.

6. 119 N.L.R.B. 232.

7. 1958, 107 U.S.App.D.C. 42, 274 F.2d 551, affirmed sub nom. National Labor Relations Board v. Drivers, Chauffeurs, Helpers Local Union No. 639, 1960, 362 U.S. 274, 80 S.Ct. 706, 4 L.Ed.2d 710. Pending the Supreme Court's considera-

tion of Curtis Brothers, Inc., on the Board's motion, we had ordered that further proceedings in this case be held in abeyance. While preserving its claim with respect to the section 8(b) (2) violation, the Board's motion had nevertheless informed us that the "principal legal issue in this case is whether picketing and the [listing] by a minority union [under the circumstances] is a violation of Section 8(b) (1) (A) of the * * * Act." And see United Rubber, Cork, Linoleum & Plastic Workers v. National Labor Relations Board, 1960, 362 U.S. 329, 80 S.Ct. 759, 4 L.Ed.2d 768.

certification, than it had demanded earlier. It did not suggest to the Company, or evince by its conduct, that the earlier demand for a union security provision was no longer extant."[8] It is thus urged that the Board was justified in concluding that some form of union shop was still an object of the Union's conduct.

This argument reflects ordinary experience that once a particular condition is shown to have existed, it is reasonable to conclude that it persists and may be presumed to continue at a later critical date.[9] We are persuaded that this principle, however valid ordinarily, can not here apply in view of the intervening circumstances.

The Board's case, stemming from the Examiner's findings, may be said to run thus. The Union in 1956 definitely asserted its objectives in support of which the strike was called. A year later, the Board conducted the decertification election on September 25, 1957, the results of which were certified on December 16, 1957. The General Counsel then filed his complaint on January 8, 1958, alleging as unlawful conduct, *inter alia*, the picketing and "unfair" listing. The Union's answer affirmatively alleged that the Union's conduct was lawful in all respects, a position which the Examiner and the Board rejected. "Despite its loss of the election and its decertification the Union continued to picket the premises of the Company and to engage in other conduct [listing]," the Examiner found. Had there been no more, we might have accepted the presumption upon which the Board relied, that the

original objectives persisted and that the supporting coercive conduct was illegal.

But most important circumstances were interposed which negated the continuity of inference. Not only this court, but the Supreme Court found, as the Union's answer had here alleged, that the Union's picketing conduct in Curtis was lawful. Thus as to the section 8(b) (1) (A) aspect of the charges here pending, no presumption of illegality could properly flow simply because of the continuous picketing. We see no basis upon which the very same picketing can be said to support an "attempt to cause" violation of section 8(b) (2). Had there been, in addition, some evidence of the use of threats and coercion, a very different case would be presented.[10] As it is, the record here is no stronger as related to the section 8(b) (2) charge than in the respect upon which the courts have sustained the Union on the section 8(b) (1) (A) charge.

As to the listing, the case is even weaker and may shortly be disposed of. The Union addressed itself to its own members in the Union's halls and to the subscribers to the Union's paper. The use of such propaganda would seem to come squarely within the rationale and the legislative history upon which National Labor Relations Board v. Drivers, Chauffeurs, Helpers Local Union No. 269[11] had turned.

We find no adequate basis presently remaining in this record to support the Board's findings and conclusions. Enforcement is denied.

---

8. Board's brief.

9. Penn Oil Co. v. Vacuum Oil Co., 1931, 60 App.D.C. 96, 99, 48 F.2d 1008, 1011; 2 Wigmore, Evidence §§ 382, 437 (3d ed. 1940).

10. Cf. National Labor Relations Board v. Local 50, Bakery & Confectionery Workers, 2 Cir., 1957, 245 F.2d 542, 547.

11. See, e. g., 1960, 362 U.S. 274, 287–291,

80 S.Ct. 706, 4 L.Ed.2d 710; cf. United Rubber, Cork, Linoleum & Plastic Workers v. National Labor Relations Board, 1960, 362 U.S. 329, 80 S.Ct. 759, 4 L.Ed. 2d 768, reversing N. L. R. B. v. United Rubber, etc., Workers, 4 Cir., 1959, 269 F.2d 694; N. L. R. B. v. International Ass'n of Machinists, 9 Cir., 1959, 263 F.2d 796, 799, certiorari denied, 1960, 362 U.S. 940, 80 S.Ct. 803, 4 L.Ed.2d 769.