**FIRST STATE BANK OF HUDSON COUNTY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. Civ. 76–1084.

United States District Court, D. New Jersey.

June 2, 1978.

Waters, McPherson, Hudzin & McNeill, Jersey City, N.J., by Daniel E. Horgan, Jersey City, N.J., for plaintiff.

Robert J. Del Tufo, U. S. Atty., Newark, N.J. by Donald J. Volkert, Jr., Asst. U. S. Atty., Newark, N.J., James P. Klapps, Dept. of Justice, Civil Division, Washington D.C., for defendant.

### MEMORANDUM

BIUNNO, District Judge.

First State Bank of Hudson County (First State) sues the United States under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* The claim is grounded on the proposition that in 1972 the Federal Deposit Insurance Corporation (FDIC) conducted an examination of the bank, with the report noting a number of exceptions. These included undue concentrations of credit (about 172% of total capital); insufficient or improperly documented or non-existent credit information on many borrowers; appraisal of collateral only at the inception of a loan with no report to the Board of Directors and no periodic review, appraisal and report; violations of both New Jersey banking statutes and FDIC regulations indicating a lack of knowledge on the part of active management, among others.

Active management of the bank's affairs was evidently in the hands of Mr. Edward

Dooley, a Certified Public Accountant with no banking experience, who had founded the bank when it was first chartered by New Jersey in 1969.

After this adverse report was submitted to the First State board, it directed Dooley to respond, which he did by a letter outlining steps taken and to be taken to meet the exceptions.

Thereafter, an FDIC examiner, Mr. Spillane, made two follow-up visits to the bank and prepared reports to the New York Regional Director of FDIC dated July 12 and September 13, 1972. Plaintiff does not have these reports, and efforts to obtain them have been resisted on the ground that they are privileged as internal agency memos of an investigatory nature. As will appear, access to these documents has no effect on the outcome of the pending motions.

In any event, it is plaintiff's theory that on the follow-up visits, Spillane learned that Dooley has not taken the promised corrective steps, or had been engaged in misapplication of bank funds, or both, and that this information was not brought to the attention of the First State board. As a result, it is claimed, the bank failed in 1976. The New Jersey Commissioner of Banking stepped in and a New Jersey Superior Court receivership was initiated. In that receivership, the corporate entity of First State was allowed to retain and prosecute the present claim.

Alternatively, if examiner Spillane did not discover what Dooley's activities were, it is possible that he was negligent in conducting his follow-up visits as a result of which the corporate entity (i. e., shareholders) suffered damage.

The claim cannot prevail on either theory. In the first place, First State is a state-chartered bank. It is not a member of the Federal Reserve System. The primary function of regulation and supervision, therefore, is one to be carried out by the New Jersey Commissioner of Banking, not by the FDIC.

The function of FDIC is to support the stability and integrity of the banking system by providing insurance on the accounts of *depositors* (now at a limit of $40,000), but not to shareholders. This arrangement goes back to the supplement to the Federal Reserve Act, enacted June 16, 1933, 48 Stat. 168, which added section 12B, classified as 12 U.S.C.A. § 264. By the Act of September 21, 1950, section 12B of the Federal Reserve Act was withdrawn and made a separate Act, now classified as 12 U.S.C.A. §§ 1811 to 1832.

A reading of the Act as a whole makes clear that the legislative purpose of the FDIC authority to conduct examinations is to protect FDIC and the deposit insurance system against loss from undue risk. FDIC neither charters banks nor controls management. To protect itself against risks of loss, the FDIC board may suspend or remove a director or officer, it may issue temporary or permanent cease-and-desist orders, or it may terminate the insurance of deposits, 12 U.S.C. § 1818.

Thus, FDIC cannot be held to owe any duty, either expressly or by implication, to First State as a corporate entity or to the shareholders, and absent such a duty no recovery may be had under the Federal Tort Claims Act.

For this reason, it makes no difference whether the FDIC examination and follow-up visits in fact turned up misconduct of Dooley which was not brought to the attention of the First State board, or whether they were performed so negligently as to fail to turn up the misconduct. In either case, absent any duty to First State, there cannot be a valid claim for recovery.

In fact, the responsibility to protect the corporate entity and its shareholders rests solely on the First State board. The 1972 Report on Examination, which that board did receive, set out exceptions of sufficient gravity as to put that board on notice. It had the authority, under N.J.S.A. 17:9A–253, 254, 255 and 256, to authorize a special examination of the bank's affairs. There is no allegation that it did so.

Beyond that, it is long established that bank examinations, by whomever con-

ducted, do not purport to amount to complete audits. Their main focus is on compliance with statutory requirements. For a thorough discussion of the subject, see *Social Security Adm'n, Baltimore F.C.U. v. United States*, 138 F.Supp. 639 (D.Md., 1956).

■ Independently of the above reasoning, it is also clear that if there were a duty, its breach as alleged would amount to a claim of implied misrepresentation. That is to say, it amounts to a claim that the First State board was falsely misled to the impression or belief that the exceptions had been satisfied, since FDIC took none of the steps it had authority to take, such as suspension or removal of Dooley, or entry of a temporary or permanent cease-and-desist order, or a hearing to terminate the deposit insurance.

On this basis, the claims cannot stand because the Congress has excluded claims grounded on misrepresentation (whether actual or implied) by 28 U.S.C.A. § 2680(h).

■ To the extent that the steps of suspension or removal, entry of cease-and-desist orders or termination of deposit insurance were not taken, the claim is also barred because these are discretionary steps, 28 U.S.C.A. § 2680(a).

■ If it be argued that the claim has some contractual basis, the amount involved is beyond this court's jurisdiction and is in the exclusive jurisdiction of the Court of Claims, 28 U.S.C. §§ 1346(a)(2), and 1491.

Decisions on the subject as a whole are relatively few, and most deal with other agencies. For the benefit of the parties, the following rulings are noted:

*Magellsen v. FDIC*, 341 F.Supp. 1031 (D–Mont., 1972);

*FDIC v. Glickman*, 450 F.2d 416 (CA–9, 1971);

*United States v. Thompson*, 293 F.Supp. 1307 (D–Ark., 1967);

*Newberg v. FSLIC*, 317 F.Supp. 1104 (D–Ill., 1970);

*Moon v. Takisaki*, 501 F.2d 389 (CA–9, 1974);

*United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961);

*Davis v. FDIC*, 369 F.Supp. 277 (D–Colo., 1974);

*Falconi v. FDIC*, 257 F.2d 287 (CA–3, 1958);

*Freeling v. FDIC*, 221 F.Supp. 955 (D–Okl., 1962), aff'd, 326 F.2d 971 (CA–10, 1963).

■ Finally, even if there were a valid claim despite all of these obstacles, the Court would be obliged to dismiss the complaint because it is clear that the administrative claim, which is a precondition to suit under the Federal Tort Claims Act, was not filed within two years, 28 U.S.C.A. § 2401(a). That claim was filed April 9, 1976. The critical date is, therefore, April 9, 1974.

Yet, it is a fact not in dispute that when the 1973 examination was conducted by both New Jersey and FDIC, the nature and extent of Dooley's criminal, illegal and unauthorized practices were brought to light and called to the attention of First State's board no later than July 19, 1973, and the board then fired Dooley.

The fact that the New Jersey Commissioner of Banking and FDIC were indulgent and considerate in allowing another three years to give First State every opportunity to put its affairs in order cannot be a basis for tolling the two-year filing requirement. The administrative claim was filed too late and so the present action cannot stand for that reason alone.

■ To make certain that First State had every opportunity to advance and support its claim, the Court undertook a laborious examination *in camera* of discovery materials subject to claims of privilege. Having done so, the Court finds that the basis for its ruling renders all these questions moot since access to the privileged materials would not affect this result.

Finally, so that the record may be complete, the application of the United States to amend its answer to the amended complaint will be granted.