**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**YUBA NATURAL RESOURCES, INC., Respondent.**

No. 86-7387.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 1987.

Decided Aug. 6, 1987.

---

John Welsh, Washington, D.C., for petitioner.

Patricia S. Radez, San Francisco, Cal., for respondent.

Before FLETCHER, BEEZER and THOMPSON, Circuit Judges.

PER CURIAM:

The National Labor Relations Board (the Board) petitions for enforcement of its order requiring Yuba Natural Resources, Inc. (Yuba) to bargain with Operating Engineers Local Union No. 3. Yuba admits its refusal to bargain with the union, but contends that the union was improperly certified by the Board.

Yuba contends that the Board erred in concluding that Clay Adamson, a union proponent, was not a supervisor within the meaning of the National Labor Relations Act (NLRA). Yuba also argues that the Board erred in failing to consolidate this case with another unfair labor practice claim. We grant the Board's petition for enforcement.

## I
### FACTUAL BACKGROUND

Yuba produces and sells rock and aggregate products from its facility located in Marysville, California. During the summer of 1983, the Marysville facilities included a central complex, the "Ores Plant," and a construction site for a new plant.[1] Seven employees, operating in two shifts, worked at the Ores Plant which provided all Yuba's materials. The plant manager was Loren Gilmore. Clay Adamson was a plant operator.

In June 1983, as Yuba's new plant neared completion, Phil Sutherling, Yuba's Executive Vice President of Operations, notified Loren Gilmore that he was needed full time at the new plant. Loren Gilmore selected Adamson to act as leadman during his absence. In a memorandum distributed to employees, Loren Gilmore stated, "I feel it is necessary to appoint a leadman to take responsibility of the plant, material and equipment. Therefore, I have chosen to appoint Mr. Clay Adamson.... As circumstances arise, and employees are not satisfied with Clay Adamson's decisions, you may consult me."

In September 1983, Yuba transferred all operations to the new site and Sutherling issued a second memorandum informing employees that Adamson would be the supervisor at the new plant. At the new plant, Adamson's duties did not change significantly. As before, Adamson operated plant machinery, inspected the product for quality and performed routine maintenance and repairs. He also assigned small jobs to other employees and ordered repair parts for the plant. He received no increase in salary.

## II
### NLRB PROCEEDINGS

On November 4, 1983, the Board conducted an election which resulted in a 12-to-8 vote for the union. Yuba filed

---

1. Prior to May 1983, the Ores Plant was owned by the Yuba River Ore Company. In 1980, the union had launched an unsuccessful campaign to become the Ore Company's employees' bargaining representative. In an NLRB case arising out of that campaign, Clay Adamson was found to be a supervisor.

timely objections to the election, alleging, among other things, that Adamson was a supervisor and that he had: (1) contacted the union and instigated the organizing drive; (2) solicited employees to sign union authorization cards; (3) outspokenly advocated union representation, and (4) threatened and coerced employees, by threatening them with discharge, to force them to vote for the union. Yuba contends that Adamson's actions created an atmosphere of fear and coercion which disturbed the conditions necessary for a free election. Supervisory participation in a union campaign will not by itself invalidate an election. *NLRB v. Hawaiian Flour Mill, Inc.*, 792 F.2d 1459, 1462 (9th Cir.1986). However, supervisory support will invalidate a union's victory when it reasonably tends to have a coercive effect on or is likely to impair an employee's choice. *Id.* (citations omitted).

In May 1984, a Board Hearing Officer recommended that the Board reject Yuba's objections and certify the union. The Hearing Officer concluded that Adamson was not a supervisor and that, even if he were, his conduct was not objectionable.[2] The Board adopted the Hearing Officer's finding that Adamson was not a statutory supervisor, but did not consider the Hearing Officer's finding concerning Adamson's pre-election conduct.

Yuba subsequently refused to bargain with the union. In response to this refusal, the Board's General Counsel issued a complaint alleging violations of sections 8(a)(5) and 8(a)(1) of the NLRA.[3] On a motion for summary judgment the Board ruled in favor of the General Counsel, and ordered Yuba to bargain with the union.

On February 10, 1984, the union filed additional unfair labor practice claims concerning Yuba's post-election conduct, including Yuba's termination of Adamson. Yuba's motion to consolidate the unfair labor practice claims was denied by the Board.

### III
### ANALYSIS

#### A. *Standard of Review*

■ The Board's factual findings are conclusive if supported by substantial evidence in the record, viewed as a whole. 29 U.S.C. § 160(e). We will uphold the Board's legal conclusions if it applied the substantive law correctly. *NLRB v. Chicago Metallic Corp.*, 794 F.2d 527, 530 (9th Cir.1986).

#### B. *Supervisor Status*

Yuba asserts that Adamson was a supervisor within the meaning of the NLRA and that his campaign activities on behalf of the union created a climate of coercion that impermissibly tainted the election. *See NLRB v. Hawaiian Flour Mill, Inc.*, 792 F.2d 1459, 1462 (9th Cir.1986); *NLRB v. Island Film Processing Co.*, 784 F.2d 1446, 1452 (9th Cir.1986) (Supervisory solicitation is a basis for invalidating an election where it tends to create an atmosphere of reprisal, punishment or intimidation.).[4]

In determining whether Adamson was a supervisor, we are guided by section 2(11) of the NLRA which provides:

(a) It shall be an unfair labor practice for an employer—
(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

. . . . .

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.
29 U.S.C. § 158(a)(1) and (5).

---

**2.** The Hearing Officer found it inconceivable that the employees at Yuba could reasonably believe that Adamson was advocating union support on behalf of the employer because Yuba's Chairman of the Board and other supervisors communicated to the employees that the company believed that this was not the time to bring in a union at Yuba.

The Hearing Officer also found no evidence that employees were threatened or coerced by Adamson into signing the authorization cards. Mere solicitation of cards, without coercion, is not objectionable conduct. *The Pine Cone, Inc. of Monterey*, 189 N.L.R.B. 569 (1971).

**3.** These sections provide:

**4.** Because we conclude that Adamson was not a supervisor, we do not reach the issue of whether Adamson intimidated or threatened employees.

The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

29 U.S.C. § 152(11).

■ The existence of any one of the enumerated powers combined with the exercise of independent judgment is sufficient to confer supervisory status upon an employee. *Chicago Metallic,* 794 F.2d at 530–31; *Island Film,* 784 F.2d at 1451. An employee who only gives minor or routine orders will not be considered a supervisor. *See Island Film,* 784 F.2d at 1451; *George C. Foss Co. v. NLRB,* 752 F.2d 1407, 1410 (9th Cir.1985).

Yuba advances several arguments in support of its claim that Adamson is a supervisor. First, Yuba contends that its designation of Adamson as a supervisor is controlling. Second, Yuba asserts that Adamson performed supervisory duties at the Ores Plant. Third, Yuba contends that employees perceived Adamson as a supervisor even if he performed no supervisory tasks. Finally, Yuba argues that Adamson must be deemed a supervisor because his duties have not changed significantly since 1981, when, in connection with the earlier union campaign, a Board Hearing Officer found he was a supervisor.

### 1. *Designation as Supervisor*

■ An employee's formal job title or classification is irrelevant. An individual will only be deemed a supervisor if he actually performs supervisory duties as defined in 29 U.S.C. § 152(11). *Chicago Metallic,* 794 F.2d at 531. We must "look to actual duties, not merely job title or classification." *Id.* (citing *International Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986)). *See also Laborers and Hod Carriers Local*

*No. 341 v. NLRB,* 564 F.2d 834, 837 (9th Cir.1977).

### 2. *Supervisory Duties*

■ Principally, Yuba contends that Adamson authorized and assigned overtime during his shifts. The parties presented conflicting testimony on this issue to the Board Hearing Officer. Adamson testified that only Gilmore and Sutherling authorized overtime. Gilmore corroborated Adamson's testimony. Sutherling, on the other hand, testified that Adamson had the authority to assign overtime. The Hearing Officer weighed the conflicting testimony and found that Adamson was not a supervisor within the meaning of the NLRA. The Hearing Officer's determination that Adamson had no authority to authorize overtime is supported by substantial evidence in the record. Consequently, we must uphold the Hearing Officer's determination on this issue. *NLRB v. Dick Seidler Enterprises,* 666 F.2d 383, 385 (9th Cir.1982); *Walla Walla Union-Bulletin, Inc. v. NLRB,* 631 F.2d 609, 613–14 (9th Cir.1980).

### 3. *Employees' Perception*

Yuba argues that Adamson was perceived as a supervisor by his fellow employees and, therefore, is entitled to supervisory status. Yuba relies on *Chicago Metallic* where we held, "An employee who technically may not satisfy the statutory criteria of Section 2(11) nevertheless may be accorded supervisory status when he is perceived to be a supervisor by other employees." 794 F.2d at 532.

■ The *Chicago Metallic* court considered the perception of fellow employees because it was faced with a "borderline case." Such is not the case here. Further, the perceptions of Yuba's employees concerning Adamson's supervisory status are far weaker here than in *Chicago Metallic.* In *Chicago Metallic,* employees believed that their supervisor, Picazzo, had authority to terminate and discipline employees, issue written reprimands, train new employees and prepare evaluations. *Id.* at 531. Here, the record demonstrates that

two employees, Martin Poe and Ernie Gilmore, believed that they "worked under" Adamson. There is no evidence, however, that Gilmore and Poe believed Adamson wielded the kind of authority possessed by Picazzo in *Chicago Metallic.* They merely alleged that they considered Adamson to be their "boss" in a vague and undefined sense.

### 4. *Effect of 1981 Determination*

 Finally, the Company contends that the Hearing Officer's 1981 determination that Adamson was a supervisor is binding in this action. This claim is untenable. The 1981 owner of the Ores Plant, Yuba River Ore Company, had fewer employees than respondent Yuba Natural Resources. Consequently, Adamson had greater responsibilities under the old management. For example, in 1981, Adamson scheduled employee hours, set lunch break policies, granted time off, authorized overtime and selected employees to be laid off. When management changed, these functions were allocated to Loren Gilmore and Sutherling. Accordingly, it was reasonable for the Hearing Officer to conclude that Adamson was not a supervisor in 1983, even though he qualified as one in 1981.

### C. *Failure to Consolidate Unfair Labor Practice Claims*

Yuba contends that the Board erred in failing to consolidate this case with a second related unfair practice claim. After the election, Yuba discharged Adamson. The union filed new unfair labor practice charges with the Board, alleging that Adamson had been discharged in retaliation for his support of the union.

Yuba argued for consolidation because the issue of Adamson's status was central to both claims and, unless the Board consolidated the cases, Yuba would be forced to litigate the issue twice. Yuba also contended that the Board might make inconsistent findings in the two cases. The Board refused to consolidate the cases, noting that consolidation would delay the Board's ability to issue a bargaining order.

The Board weighed these competing concerns and denied Yuba's motion to consolidate. The Board's refusal to consolidate the union's unfair labor practice claims is reviewed for abuse of discretion. *NLRB v. Local Joint Executive Board of Hotel & Restaurant Employees,* 301 F.2d 149, 155–56 (9th Cir.1962). The Board did not abuse its discretion.

The Board's petition for enforcement is GRANTED.