NATIONAL LABOR RELATIONS
BOARD, Petitioner,

Carpenters Local Union No.
2236, Intervenor,

v.

John KOLKKA, d/b/a Kolkka Tables and
Finnish–America Saunas, a sole
proprietorship, Respondent.

No. 97–71132.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 9, 1999.

Decided March 17, 1999.

John Arbab, Margaret Ann Gaines, and Anne Marie Lofaso, Washington, D.C., for the petitioner.

Mark R. Thierman, Donald G. Ousterhout, Therman Law Firm, San Francisco, California, for the respondent.

Before: WOOD,[1] THOMPSON, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge:

This appeal presents the question of whether an employer may refuse to bargain with certified representatives of its employees because some of the voting employees were undocumented aliens. We hold that an employer may not do so, and grant the National Labor Relations Board's petition for enforcement of its cease and desist order.

I

John Kolkka is the sole proprietor of a sauna and furniture manufacturing business known as Kolkka Tables and Finnish–Ameri-

---

1. The Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Cir-    cuit Court of Appeals, sitting by designation.

can Saunas ("Kolkka"). He employs approximately fifty persons in his factory. In May 1996, the Carpenters Union Local 2236 ("the Union") filed a petition requesting the right to hold an election among Kolkka's employees. Shortly after receipt of the petition, Kolkka suspended several employees on the suspicion that they were undocumented alien workers, but notified the National Labor Relations Board ("NLRB") that the employees would be granted a short period to demonstrate proper documentation. The Union filed an unfair labor practice charge with the NLRB, which is not at issue in this appeal, alleging that Kolkka was using the threat of deportation to discourage support for the Union. The employees submitted additional documentation, which Kolkka accepted, and they remained employees of the company.

Thereupon, Kolkka and the Union negotiated the question of which employees would comprise the election voting class. An accord was reached, and the stipulated election agreement specified the voting class as:

> All full-time and regular part-time production and maintenance employees employed by the Employer at its facilities located at 2384 Bay Road and 841 Kaynyne Avenue, Redwood City, California including welders and foreman (Octavio Barajas) and plant clerical Alicia Williamson; excluding all office clerical employees, guards and supervisors as defined in the Act.

Pursuant to the agreement, a representation election by secret ballot was conducted, with the Union prevailing. Following the election, Kolkka timely filed objections to the election, arguing that six employees were ineligible to vote because they were undocumented aliens. The NLRB Regional Director recommended that Kolkka's objections be overruled. Kolkka filed exceptions, but the NLRB adopted the Regional Director's findings and recommendations, and ordered him to certify the Union as the exclusive collective bargaining representative. Following certification, the Union requested Kolkka to recognize it as the exclusive bargaining representative and to commence collective bargaining. Kolkka refused to bargain, still contending that ineligible workers had voted

in the election. The Union filed an unfair labor practice charge against Kolkka.

The Regional Director issued a complaint on behalf of the General Counsel to the NLRB alleging that Kolkka had refused to bargain with the Union in violation of 29 U.S.C. § 158(a)(5) and (1) (1998). Kolkka responded by admitting its refusal to bargain, but contesting the certification of the Union. The NLRB issued an order transferring the proceedings to itself and requesting Kolkka to show cause why the General Counsel's motion for summary judgment should not be granted. Kolkka requested an extension of time to respond, alleging among other matters that new evidence indicated that the Union had threatened employees with physical harm or deportation if they did not vote for the Union. The NLRB afforded Kolkka five days to demonstrate that the evidence was newly discovered and previously unavailable. Although Kolkka submitted further affidavits, none of them specifically addressed this issue. Accordingly, the NLRB refused to consider the new evidence and issued a Decision and Order granting summary judgment to the General Counsel on the unfair labor practice charge. The NLRB then petitioned for enforcement of the final order, a petition over which we have jurisdiction. 29 U.S.C. § 160(e); *Eads Transfer v. NLRB*, 989 F.2d 373, 374 (9th Cir.1993).

## II

We review decisions and orders of the NLRB under the substantial evidence standard, and defer to the NLRB's reasonable interpretation and application of the National Labor Relations Act ("NLRA"). *NLRB v. Iron Workers of the State of Cal.*, 124 F.3d 1094, 1098 (9th Cir.1997). The NLRB's statutory interpretation of its governing statute is entitled to particular deference where, as here, the NLRB is interpreting a term in the NLRA that establishes its statutory jurisdiction. *Saipan Hotel Corp. v. NLRB*, 114 F.3d 994, 996–97 (9th Cir.1997). In interpreting how the NLRA is affected by other statutes, the NLRB must account for the goals of the other statutes in ordering its remedy, and a reviewing court must uphold the NLRB's interpretation if reasonable.

*NLRB v. Lee Hotel Corp.*, 13 F.3d 1347, 1351 (9th Cir.1994). Because Kolkka has admitted its refusal to bargain, we must grant the NRLB's enforcement petition unless Kolkka can prevail in its challenge to the validity of the election. 29 U.S.C. § 158(a)(5) and (1); *Napili Shores Condominium v. NLRB*, 939 F.2d 717, 718 (9th Cir.1991).

Kolkka contends that undocumented alien workers cannot be considered employees within the meaning of the NLRA, and that their participation in the election rendered it invalid. The Supreme Court has already considered and rejected this argument, expressly determining that undocumented alien workers are "employees" within the meaning of the NLRA. *See Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 891, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984). However, Kolkka claims that the rational underpinnings of *Sure–Tan* were altered by passage of the Immigration Reform and Control Act of 1986 ("IRCA"), which rendered unlawful the employment of undocumented alien workers. 8 U.S.C. § 1324a (1998).

The NLRB declined to adopt Kolkka's theory, holding that IRCA did not alter the NLRA definition of "employee" for the purposes of determining who was eligible to vote in the election. According to the NLRB, the relevant inquiry is not whether a particular individual may have been legally subject to termination on the date of the election, but whether, at the time of their participation in the election, he or she was in fact an employee as defined in the NLRA. The NLRB contends that if an employer has not terminated an employee prior to the election in order to comply with IRCA, that employer cannot attempt to invalidate the election by challenging employees' status after the election occurs.

■■■ We find the NLRB's interpretation and reconciliation of the two statutes reasonable. Eligibility to vote in a union organizing election "depends on whether an employee is sufficiently concerned with the terms and conditions of employment in a unit to warrant his participation in the selection of a collective bargaining agent." *Shoreline Enterprises of America, Inc. v. NLRB*, 262 F.2d 933, 944 (5th Cir.1959). We have expressly held that persons employed in a bargaining unit during the eligibility period and on the date of the election are eligible to vote. *NLRB v. S.R.D.C., Inc.*, 45 F.3d 328, 331 (9th Cir.1995). This is known as the "date certain test," which was explicitly adopted in *S.R.D.C.* to address the question of whether employees subject to termination shortly after the election were to be considered employees for the purposes of union election participation. *Id.*

> Under the date certain test, an employee may be fully aware that his or her employment will be short-lived, but, as long as no definite termination date is known and the employee was employed on the eligibility and election dates, he or she will be eligible to vote.

*Id.* at 332. Kolkka had an established policy of employing workers with questionable documentation. None of the election participants had been given a date certain as to termination. Consequently, their participation in the election was valid, even if their status as employees may have been subject to challenge under IRCA.[2]

Furthermore, Kolkka's contention that the IRCA flatly prohibits undocumented workers from being considered as "employees" under the NLRA is at odds with the plain language of the statute. The NLRA's definition of "employee" is expansive, but quite specific as to its exceptions:

**2.** Kolkka offers no cases to support the proposition that the legality of a worker's employment status would alter this calculus. Indeed, in *New Foodland, Inc.*, 205 N.L.R.B. 418, *available at* 1973 WL 5140 (N.L.R.B.1973), the NLRB implicitly held that the fired worker was subject to the protection of the act as an "employee" even though her status as an employee was itself a violation of the law. In that case, the NLRB found an unfair labor practice where an employer fired a newly enlisted member of the union on the stated grounds that she did not meet the state age requirement to stock liquor, even though that had been her assigned task up to that point. The NLRB noted that "[i]f the reason asserted by the employer for a discharge is a pretext, then the nature of the pretext is immaterial. That is true even where the pretext involves a reliance on state or local laws." 1973 WL 5140 at *5.

The term "employee" shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway Labor Act, as amended from time to time, or by any other person who is not an employer as herein defined.

29 U.S.C. § 152(3) (1998).

■ Thus, the NLRA does not exclude undocumented aliens as employees, and courts have so construed the statute's reach. *See, e.g., Sure–Tan,* 467 U.S. at 891, 104 S.Ct. 2803; *NLRB v. Apollo Tire Co.,* 604 F.2d 1180, 1182–83 (9th Cir.1979).

The IRCA, by its terms, does not alter this. It did not purport to amend the NLRA or any other labor act. Indeed, the IRCA's legislative history indicates this was a deliberate choice. The House Judiciary Committee Report on the IRCA specifically states that the IRCA was "not intended to limit in any way the scope of the term 'employee'" under the NLRA, or the "rights and protections stated in Sections 7 and 8 [of that Act]." H.R. REP. NO. 99–682(1) 99th Cong., 2d Sess. at 58, *reprinted in* 1986 U.S.C.C.A.N. 5649, 5662.

■ The principles of statutory construction also militate against Kolkka's interpretation. Given that Congress did not chose not to modify the NLRA when it passed the IRCA, Kolkka can only argue repeal by implication, a heavily disfavored construction. *See Kee Leasing Co. v. McGa-*

*han (In re Glacier Bay),* 944 F.2d 577, 581 (9th Cir.1991). There are two categories of repeals by implication: (1) cases of irreconcilable conflict and (2) cases in which the later act covers the whole subject of the earlier one. *See Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 154, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976). The latter category has no application to this case because Congressional efforts at immigration reform plainly did not cover the entire subject of national labor relations, nor was the IRCA "clearly intended as a substitute" for the NLRA. *Id.*

Similarly, the IRCA does not satisfy the preconditions of the first category because the statutes are not in irreconcilable conflict. In order to find irreconcilable conflict, the new statute must be clearly repugnant in word or purpose to the old statute. *Kee Leasing,* 944 F.2d at 581 (citations and quotations omitted). Even when two statutes are found to be in conflict, "[r]epeal is to be regarded as implied only if necessary to make the [later enacted law] work, and even then, only to the minimum extent necessary." *Id.* (citations and quotations omitted).

We agree with the NLRB that there is no conflict between the statutes as they are applied to this case. Indeed, were we to adopt Kolkka's theory, an employer would be able to avoid its obligations under both statutes. An employer would be rewarded for violating the IRCA through the hiring and continued employment of unauthorized aliens because their participation in any union election would defeat that election, even if it was otherwise valid under the NLRA. Employers with undocumented alien employees could manipulate election results either post hoc, by discretionarily modifying the composition of the voting unit, or prior to the election, by using the threat of deportation to discourage pro-union support.[3] To the extent that employers will presumably seek to avoid the dilemma confronted by Kolkka, the *Sure–Tan* interpretation of the NLRA buttresses rather than conflicts with the purpose of the IRCA. Kolkka has failed to satisfy the requirements for an implied statutory repeal

---

**3.** This is illustrated by the employer's actions in this case. Here, the employer specifically stipulated that foreman Octavio Barajas would be part of the voting unit, then attempted to disqualify him by name as a suspected unauthorized alien once the election results were known.

with respect to the narrow issue presented in this case.

For all these reasons, we find the NLRB statutory interpretation eminently reasonable as applied in this case. Although at least one other circuit has considered the degree to which the remedies for retaliatory discharge as authorized by the NLRA are still applicable to undocumented aliens after the IRCA, *see NLRB v. A.P.R.A. Fuel Oil Buyers Group, Inc.,* 134 F.3d 50, 56 (2d Cir.1997), the NLRB's argument here is much more limited in scope. The NLRB simply argues that if an employer has not discharged its responsibilities under the IRCA prior to a union election, it may not attempt to disqualify its employees from voting even if subsequent inquiry shows them to be subject to termination as unauthorized aliens. This result is consistent with the manner in which other categories of terminable employees are treated for union election purposes, and is a reasonable reconciliation of the two statutes at issue.

### III

■ We also uphold the NLRB's refusal to allow a hearing on the new evidence offered by the employer at the unfair labor practice proceeding on the grounds that the employer failed to explain why the evidence was previously unavailable. *See* 29 C.F.R. § 102.65(e)(1)(West 1998) ("A motion for rehearing shall specify briefly ... why it was not presented previously.") The NLRB has a "relitigation rule" first announced in *Pittsburgh Plate Glass Co. v. NLRB,* 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251 (1941), which states that in the absence of newly discovered and previously unavailable evidence or special circumstances the NLRB will not consider any issue that could have been litigated in a prior representation proceeding. *Id.* at 162, 61 S.Ct. 908. We have explicitly adopted the rule that unless the above exceptions apply "one is not entitled to relitigate in a[n] [unfair labor practice] proceeding an issue that was or could have been litigated in a prior representation proceeding." *NLRB v. Best Products Co.,* 765 F.2d 903, 910 (9th Cir.1985).

The NLRB notes that Kolkka did not introduce the evidence of improper union behavior at the representation proceeding, and Kolkka concedes as much. In its decision, the NLRB determined that the employer had "failed to demonstrate or even present any theory why such evidence was unavailable during the representation case proceedings." Therefore, the NLRB concluded that there was "no legal basis for considering the respondent's evidence" at that stage, and refused to remand on the case for a factual determination. Our jurisprudence supports that conclusion. *See Best Products,* 765 F.2d at 909; *see also NLRB v. Pacific International Rice Mills, Inc.,* 594 F.2d 1323, 1327 (9th Cir.1979) (holding that where the employer provided "no justification for its failure to raise the question ... at the time of the representation proceedings" that party "is not entitled to relitigate issues which were or could have been litigated in a prior representation proceeding"); *Pacific Southwest Airlines v. NLRB,* 587 F.2d 1032, 1035 n. 5 (9th Cir.1978) (reiterating that "issues that could have been raised at the representation hearing cannot be raised for the first time in defense of an unfair practice charge").

Thus, the NLRB did not abuse its discretion in refusing to hear new evidence offered in support of a completely new legal theory at the unfair labor practice proceeding, particularly given the employer's failure to justify its failure to introduce the evidence earlier. *See Best Products,* 765 F.2d at 910.

### IV

■ The NLRB did not err in refusing to consolidate this unfair labor practice proceeding with another unfair labor practice proceeding pending against Kolkka, a decision which we review for an abuse of discretion. *See NLRB v. Yuba National Resources, Inc.,* 824 F.2d 706, 710 (9th Cir. 1987). The resolution of the related matter required factual findings as to the intent of the employer. In contrast, this case required an adjudication of a legal question which was properly subjected to determination through a summary judgment proceeding. The NLRB's refusal to consolidate sep-

arate proceedings involving distinct legal and factual issues is not an abuse of its discretion. *See Yuba National Resources,* 824 F.2d at 710.

## V

We deny the employer's request for attorneys fees, because the NLRB's position was substantially justified, 28 U.S.C. § 2412(d)(1)(A), and grant the NLRB's petition for enforcement.